UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DIANA VANBUSKIRK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:10-CV-360 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Diana Vanbuskirk appeals to this Court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (Docket # 1.) For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED for further proceedings in accordance with this Opinion.

## I. PROCEDURAL HISTORY

Vanbuskirk applied for DIB and SSI in April 2007, alleging that she became disabled as of June 24, 2004. (Tr. 145-47, 153-58.) The Commissioner denied her application initially and upon reconsideration, and Vanbuskirk's application was denied by Administrative Law Judge ("ALJ") Yvonne K. Stam in an August 26, 2009, decision. (Tr. 7-18.) Vanbuskirk filed a Request for Review with the Appeals Council. (Tr. 1-6.) The Appeals Council, however, denied Vanbuskirk's request on August 13, 2010, making the ALJ's decision the final decision of the

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

1

Commissioner. (Tr. 1-6.)

Vanbuskirk filed a complaint with this Court on October 15, 2010, seeking relief from the Commissioner's final decision. (Docket # 1.) On appeal, Vanbuskirk argues that the ALJ's hypothetical question inadequately accounted for her limitations in concentration, persistence, or pace. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Br.") 10-15.)

## II. FACTUAL BACKGROUND

### A. Background

Vanbuskirk was thirty-five years old at the time of her alleged onset date. (Tr. 145.) She has a high school education and past relevant work as a stocker, production assembler, desk clerk, and in accounts payable/receivable. (Tr. 186, 260.) Vanbuskirk alleges that she is disabled due to dysthymia, major depression, edema, morbid obesity, right-foot bone spur, cellulitis, degenerative joint disease in both knees, and lower back pain. (Br. 2.)

### B. Summary of Relevant Medical Evidence[2]

In September 2002, Vanbuskirk saw Dr. Julie Utendorf and reported that she had been very depressed over the last year because she had gained a large amount of weight. (Tr. 367.) In April 2005, she returned to discuss possible bariatric surgery. (Tr. 369.) She weighed 402 pounds and had tried multiple home treatments for weight loss without success, including the Atkins diet, a six-week make-over diet, Weight-Watchers, Curves, and medications. (Tr. 369.) Dr. Utendorf discussed the possibility of depression, and Vanbuskirk reported that she was depressed because of her excessive weight, could not get around with her child, and was in pain. (Tr. 369.) Dr. Utendorf thought she would be a good candidate for bariatric surgery. (Tr. 369.)

---

[2] Because Vanbuskirk's challenge to the ALJ's decision is largely procedural, and in the interest of brevity, this Opinion recounts only the portions of the 420-page administrative record necessary to the decision.

Vanbuskirk was again seen in March 2006 for a problem related to swelling on the back of her calf. (Tr. 371.) She was diagnosed with a large mass on the left leg with the possibility of secondary infection. (Tr. 371.) She returned in May 2006 to discuss weight loss. (Tr. 371.) Vanbuskirk had spoken with a dietician and her weight was to be checked monthly to keep her accountable to her diet and exercise program. (Tr. 371.) On exam, her affect was saddened and she was crying easily. (Tr. 371.) The record reflects that Vanbuskirk returned every month for a weight check and exam until December 2006, yet failed to lose weight. (Tr. 372-75.)

Dr. Henry Martin, a consultative psychologist, examined Vanbuskirk in June 2007. (Tr. 329-32.) Vanbuskirk informed Dr. Martin that although she suffered from depression, she had never sought mental health treatment. (Tr. 329.) Vanbuskirk reported that she did all of the cooking, cleaning, and laundry for herself and her daughter. (Tr. 331.) She drove a car, ran errands, visited her parents, and frequently saw her friends. (Tr. 331-32.) Dr. Martin observed that Vanbuskirk had no unusual thought content and was oriented to the time and date. (Tr. 330.) Vanbuskirk could recall two of three objects after five minutes and remember six digits forward and three backwards. (Tr. 331.) She did not know the correct answer to seven times nine, but could otherwise perform simple addition, subtraction, and division. (Tr. 331.) She answered several knowledge assessment questions correctly and could name five large cities. (Tr. 331.) Dr. Martin diagnosed Vanbuskirk with a mood disorder and assigned her a Global Assessment of Functioning ("GAF") score of 52.[3] (Tr. 332.)

Donna Unversaw, a state agency psychological consultant, reviewed Vanbuskirk's

---

[3]A GAF score measures a clinician's judgment of the individual's overall level of psychological, social, and occupational functioning. *See* DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS - Text Revision 32 (4th ed. 2000). The higher the GAF score, the better the individual's psychological, social, and occupational functioning. A GAF score of 52 is indicative of someone with some moderate symptoms or moderate difficulty in social, occupational, or school functioning.

medical records and assessed her impairment in June 2007. (Tr. 335-48.) Dr. Unversaw concluded that Vanbuskirk's mental impairments were not severe. (Tr. 335.) Dr. Unversaw found that VanBuskirk had no restrictions in her activities of daily living, maintaining social functioning, or maintaining concentration, persistence or pace. (Tr. 345.) Dr. Unversaw further noted that Vanbuskirk had not had any episodes of decompensation. (Tr. 345.) Another state agency psychologist, Dr. Larsen, concurred with Dr. Unversaw's conclusions. (Tr. 364.)

Vanbuskirk was seen by Dr. Brandon Dickey on June 16, 2007, at the request of Social Security, secondary to claims of morbid obesity and osteoarthritis of the bilateral knees. (Tr. 324.) She complained of chronic pain in both her knees and from pains in her hands and feet. (Tr. 324.) On physical exam she was 67.5 inches tall and weighed 428 pounds. (Tr. 324.) Dr. Dickey found 2+ pitting edema in her lower extremities, and she had reduced range of motion in the low back and knees. (Tr. 325-26.) She was unable to perform heel walk, toe walk, or tandem gait because of her obesity, which also made joint examination very difficult. (Tr. 325.) X-rays were taken of both knees and showed degenerative joint disease. (Tr. 362-63.)

Vanbuskirk sought mental health treatment for the first time in July 2007. (Tr. 358.) A licensed mental health care provider at the Bowen Center, Ms. Lynn Baker, diagnosed her with major depressive disorder. (Tr. 359.) Vanbuskirk reported that she had gone through 150 job interviews without success. (Tr. 358.) Ms. Baker found that Vanbuskirk did not demonstrate any thought disorder; was oriented to time, place, and person; and her memory was intact. (Tr. 358.) She further observed that Vanbuskirk was alert and goal oriented. (Tr. 358.) Vanbuskirk saw Ms. Baker again in March, April, and May 2008. (Tr. 397-99.)

Dr. J. Sands performed a Physical Residual Functional Capacity Assessment on July 5,

4

2007. (Tr. 349-56.) Dr. Sands found that Vanbuskirk could occasionally lift and/or carry up to ten pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk at least 2 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and push and/or pull without limitation, except as consistent with lift and/or carry. (Tr. 350.) Dr. Sands also found postural limitations including only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 351.) Dr. D. Neal reviewed Dr. Sands's findings and affirmed them on September 29, 2007. (Tr. 365.)

Vanbuskirk was seen again by Dr. Utendorf in September 2007 to discuss gastric bypass surgery. (Tr. 377.) She reported intermittent depression without any suicidal thoughts. (Tr. 377.) She was seen again in November 2007 for problems with her right foot. (Tr. 378.) X-rays showed a spur which was not plantar related, and the doctor thought her right foot pain was degenerative in nature. (Tr. 378.)

Vanbuskirk returned in April 2008 for a medication check. (Tr. 394.) She reported that things were going well for her emotionally and that she was continuing her weight loss efforts, but had not had any success. (Tr. 394.)

In August 2008, Vanbuskirk was admitted to the emergency room with a rash on her face. (Tr. 401.) She also discussed her depression at length, and reported that her medication was not helping very much. (Tr. 401.) She stated that she had been under a lot of stress, and she was not watching her diet or exercising. (Tr. 401.) Dr. Utendorf discussed simple lifestyle modifications, such as diet and exercise, that could improve her health. (Tr. 401.)

Vanbuskirk returned in January 2009, complaining about a problem with an area on her leg. (Tr. 401-2.) She was diagnosed with having a mass on her left leg, most likely of thickened

5

skin, but there was no evidence of edema. (Tr. 401-2.)

## C. Vanbuskirk's Hearing Testimony

On August 4, 2009, Vanbuskirk appeared with counsel and testified before the ALJ. (Tr. 20-47.) Ms. Donna Vanbuskirk, the claimant's mother and Dr. Robert Vargas, the Vocational Expert ("VE"), also testified. Vanbuskirk testified that she suffered from edema in her extremities and she needed to elevate her legs for half of the day to alleviate the discomfort. (Tr. 30-31.) She asserted that she could be on her feet for three hours in an eight-hour day, but that she had trouble lifting, bending, crawling, stooping and crouching. (Tr. 36-37.)

Vanbuskirk alleged that she suffered from depression, her concentration was affected, and she had trouble focusing, but she stated that Prozac helped. (Tr. 26, 33-36.)

In Vanbuskirk's application for SSI benefits, she asserted that her disability began in June 2004. (Tr. 153.) At the hearing, however, Vanbuskirk testified that she stopped working in July 2004 because her employer went out of business. (Tr. 23.) She asserted that she would have remained in that job (an accounts receivable position) if the company had not ceased business. (Tr. 23.) She further clarified that if she were allowed to sit or stand at will, she could still perform her previous position 8 hours a day, 40 hours a week. (Tr. 24-25.)

Vanbuskirk also described her efforts to find another job during her alleged disability period. She testified that she applied for another job as recently as a month prior to the hearing and had sought assistance in obtaining work from Indiana Vocational Assistance Services. (Tr. 26-29.) She noted that she would go to the Vocational Assistance office every other day to look for work, but was nonetheless unsuccessful in finding work. (Tr. 28-29.) Vanbuskirk expressed frustration that she had gone to "so many interviews" without success. (Tr. 29.)

Vanbuskirk's mother also testified and asserted that Vanbuskirk's edema limited her functioning. (Tr. 39-40.) She claimed that, in her opinion, Vanbuskirk's depression was severe and that, at times, Vanbuskirk experienced difficulty focusing. (Tr. 41-42.) In a third party function report, however, Vanbuskirk's mother noted that Vanbuskirk had no difficulty paying attention, finishing what she started, or following written and spoken instructions. (Tr. 230.)

Finally, Dr. Vargas, the VE, testified. (Tr. 42-47.) The ALJ asked the VE to consider a hypothetical individual with Vanbuskirk's age, education, and past work experience, who could occasionally lift up to ten pounds but frequently less than ten pounds, can stand or walk at least two hours in an eight-hour day, and sit with normal breaks for a total of about six hours. (Tr. 43.) The ALJ also directed the VE to consider that the individual had no limitations in her ability to push and pull and could only occasionally climb, balance, stoop, kneel, crouch, or crawl. (Tr. 43.) In response, the VE testified that such an individual could perform Vanbuskirk's past relevant work. (Tr. 43.) When the ALJ added the requirement of a sit/stand option, the VE testified that such an individual could perform unskilled work as a surveillance monitor (150 jobs in the region), order clerk (150 jobs in the region), and credit clerk (100 jobs). (Tr. 44.) The VE further testified that the identified jobs required less concentration and focus than VanBuskirk's past work in accounts receivable. (Tr. 44.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

7

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process,

8

requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

On August 26, 2009, the ALJ rendered her opinion. (Tr. 7-18.) She found at step one of the five-step analysis that Vanbuskirk had not engaged in substantial gainful activity since her alleged onset date of July 30, 2004. (Tr. 12.) At step two, she determined that Vanbuskirk had the following severe impairments: morbid obesity, knee pain, back pain, and depression. (Tr. 12.) At step three, she determined that Vanbuskirk's impairments were not severe enough to meet a disability listing. (Tr. 12-13.) The ALJ found that Vanbuskirk's mental impairments created mild limitations in her activities of daily living and social functioning and that she had moderate difficulties in concentration, persistence, and pace. (Tr. 12.) Additionally, the ALJ

---

[4] Before performing steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

9

determined that Vanbuskirk possessed the RFC to perform sedentary work, except that she could only occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 13.) The ALJ also found that she could only perform unskilled work because of her inability to sustain the concentration and focus required by skilled work and that she needed to be able to alternate between sitting and standing as needed. (Tr. 13.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that because Vanbuskirk could only perform unskilled, sedentary work, she could not return to her past relevant work. (Tr. 17.) However, the ALJ found that there are a significant number of jobs in the national economy that Vanbuskirk could perform. (Tr. 17.) She therefore concluded at step five that Vanbuskirk was not under a disability at any time from the alleged onset date through the date of the decision and her claim for benefits was denied. (Tr. 17-18.)

### C. The ALJ Erred By Failing to Incorporate Her Finding That Vanbuskirk Had Moderate Deficits in Maintaining Concentration, Persistence, or Pace into Her Questioning of the VE at Step Five

Vanbuskirk argues that the ALJ erred by failing to incorporate her finding that she had moderate deficits in maintaining concentration, persistence, or pace, into the RFC and into her questioning of the VE at step five. (Br. 10 (citing Tr. 13, 44).) Vanbuskirk's argument is ultimately persuasive and warrants a remand of the Commissioner's final decision.[5]

To determine the severity of a claimant's mental impairment, the ALJ must address a claimant's degree of functional limitation in four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

---

[5] Vanbuskirk also advances a summary and undeveloped argument that the ALJ erred when evaluating the credibility of her symptom testimony. Because remand is warranted on her first argument, the Court need not consider Vanbuskirk's credibility argument.

20 C.F.R. §§ 404.1520a(c)(3), 416.920(a)(c)(3); *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001). The Seventh Circuit Court of Appeals has stated that the ALJ must then "incorporate" these limitations into the hypothetical questions posed to the VE at step five. *Kasarsky v. Barnhart*, 335 F.3d 539, 543-44 (7th Cir. 2003) (holding that the ALJ erred when neither his RFC nor his hypothetical question to the VE "[took] into account" his finding at step two that the claimant had deficiencies in concentration, persistence, or pace); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Stated more broadly, "to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate *all* relevant limitations from which the claimant suffers." *Kasarsky*, 335 F.3d at 543 (emphasis added); *see also Stewart*, 2009 WL 859830, at *3 ("When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record.").

At step three of her analysis, the ALJ found that Vanbuskirk had moderate deficiencies in maintaining concentration, persistence, or pace. (Tr. 12.) Yet, the RFC and the hypothetical question posed by the ALJ to the VE did not incorporate these findings, and the ALJ instead obliquely referred to the work Vanbuskirk could supposedly perform as "unskilled." (Tr. 42.)

The Commissioner argues that the ALJ's limitation adequately accommodates Vanbuskirk's mental health deficits. Vanbuskirk disagrees and argues that the ALJ's failure to incorporate her moderate limitations in concentration, persistence, or pace into the hypothetical posed to the VE, left the VE with an incomplete picture of her actual limitations.

"[A]n [ALJ] is free to formulate [her] mental residual functional capacity assessment in terms such as 'able to perform simple, routine, repetitive work' so long as the record adequately

11

supports that conclusion." *Kusilek v. Barnhart*, No. 04-C-310-C, 2005 WL 56716, at *4 (W.D. Wis. Mar. 2, 2005). That is, courts have held that when a medical source of record translates his findings into a particular RFC assessment, the ALJ may reasonably rely on that opinion in formulating a hypothetical question for the VE. *See, e.g.*, *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (concluding that the ALJ's limitation to low-stress, repetitive work adequately incorporated the claimant's moderate mental limitations because the consulting physician had essentially "translated her findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work."); *Howard v. Massanari*, 255 F.3d 577, 581-82 (8th Cir. 2001) (concluding that the ALJ adequately captured the claimant's deficiencies in concentration, persistence, or pace in his RFC that limited the claimant to simple, repetitive tasks, in part because the state agency psychologist concluded in his functional capacity assessment that the claimant could sustain sufficient concentration and attention to perform simple, repetitive, and routine activity); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (finding that the ALJ's limitation of plaintiff to work that is "routine and low stress" as recommended by one medical source of record adequately accounted for the fact that plaintiff often suffered from deficiencies in concentration, persistence, or pace).

This, however, is *not* a case where the ALJ relied upon a medical source's translation of Vanbuskirk's moderate deficits in concentration, persistence, or pace into a specific RFC finding. To explain, Dr. Unversaw, the state agency physician, found that Vanbuskirk had no difficulties in maintaining concentration, persistence, or pace, and never translated that finding into a specific RFC. (Tr. 345.) The ALJ, however, ultimately concluded that Lee's mental deficits were *more severe* than those articulated by the state agency physician, finding that she

had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 12.)

Thus, the Court in its review of the record noted no medical source opinion that translated Vanbuskirk's moderate deficits in maintaining concentration, persistence, or pace into an RFC of "unskilled work"; therefore, the ALJ obviously created this limitation of her own accord. The Seventh Circuit Court of Appeals, however, has found a hypothetical question flawed where it "purported to tell the vocational expert what types of work [the claimant] could perform rather than setting forth [the claimant's] limitations and allowing the expert to conclude on her own what types of work [the claimant] could perform." *Young v. Barnhart*, 362 F.3d 995, 1004 n.4 (7th Cir. 2004); *see also Stewart*, 561 F.3d at 2009 WL 859830, at 684; *Everroad v. Astrue*, No. 4:06-cv-100, 2007 WL 2363375, at *8 (S.D. Ind. Aug. 10, 2007) ("By using conclusory language to describe [the claimant's] limitations, the ALJ did not allow the expert to make a reliable determination about what work the claimant could perform.").

In *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010), the Seventh Circuit stated that in most cases, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *See also Stewart*, 561 F.3d at 684-85 (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence and pace); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings). The Court explained that "[t]he ability to stick with a given task over a sustained period is *not* the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 677-78. (emphasis added) (collecting cases).

13

As emphasized *supra*, when an ALJ relies on a VE's testimony, the hypothetical questions based on the claimant's RFC must incorporate *all* of the claimant's limitations that are supported by medical evidence in the record. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). That is, "the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor*, 627 F.3d at 620-21.

Accordingly, this case will be remanded to the Commissioner so that the ALJ may properly incorporate Vanbuskirk's moderate difficulties in maintaining concentration, persistence, or pace, together with the other limitations that she articulated at step three, into her analysis at step five.[6] *See Kasarsky*, 335 F.3d at 544.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order. The Clerk is directed to enter judgment in favor Vanbuskirk and against the Commissioner.

SO ORDERED.

Enter for July 26, 2011.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge

---

[6] To be clear, in remanding the case, the Court is not finding that Vanbuskirk is entitled to benefits. That decision rests with the ALJ after correcting a procedural error in her hypothetical.